IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JAMES LOGAN DIEZ, | § | |
| TDCJ # 342162, | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | EP-14-CV-299-DCG |
| | § | |
| WILLIAM STEPHENS, | § | |
| Director, Texas Department of | § | |
| Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
|     Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Petitioner James Logan Diez's petition under 28

U.S.C. § 2254 for a writ of habeas corpus by a person in state custody (ECF No. 6).[1]  In his

petition, Diez challenges Respondent William Stephens's failure to release him from prison to

mandatory supervision and seeks relief from certain conditions imposed by Texas Department of

Criminal Justice ("TDCJ") Parole Division officials upon his release to mandatory supervision.[2]

Stephens maintains "[t]he Court should dismiss Diez's petition with prejudice as it is moot and

not cognizable on federal habeas review."[3]  After carefully reviewing the record and for the

---

[1] "ECF No." in this context refers to the Electronic Case Filing number for documents docketed in this case.  Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

[2] Pet'r's Pet. 6–9, ECF No. 6, Aug. 14, 2014.  *See also* Tex. Gov't Code § 508.001(5) (" 'Mandatory supervision' means the release of an eligible inmate sentenced to the institutional division so that the inmate may serve the remainder of the inmate's sentence not on parole but under the supervision of the pardons and paroles division.").

[3] Resp't's Answer 1, ECF No. 22, Dec. 15, 2014.

reasons discussed below, the Court finds that Diez is not entitled to § 2254 relief. The Court will accordingly deny Diez's petition and decline to certify his issues for appeal.

## BACKGROUND AND PROCEDURAL HISTORY

A jury in Tom Green County, Texas, found Diez guilty of burglary of a habitation and, on July 21, 1982, the 119th Judicial District Court sentenced him to thirty years' imprisonment.[4] The Texas Board of Pardons and Paroles ("the Board") released Diez on parole and to mandatory supervision on multiple occasions, only to later revoke his supervised release.[5] On one occasion, February 15, 1990, Diez was returned to TDCJ custody after the 51st Judicial District Court in Tom Green County sentenced him to five years' imprisonment for arson and the Board revoked his parole. The Board last released Diez to mandatory supervision on November 27, 2013. The Parole Division executed a pre-revocation arrest warrant on January 20, 2014, and placed Diez in an Intermediate Sanction Facility ("ISF"), on March 11, 2014. It withdrew the warrant and released Diez from the ISF on May 28, 2014. The Parole Division executed a second pre-revocation arrest warrant on June 15, 2014, but withdrew it on July 3, 2015. Diez will receive credit for this time in custody in the event the Board revokes his mandatory supervision.[6]

As a condition of his mandatory supervision, Diez currently resides at the El Paso Transitional Center, a 200-bed residential halfway house operated by a private contractor in El

---

[4] Resp't's Answer, Ex. A (Commitment Inquiry), ECF No. 22-1, Dec. 15, 2014.

[5] *Id.*, Ex. B, (Aff. of Charley Valdez, Program Supervisor III, Classification and Records Department, Texas Department of Criminal Justice), ECF No. 22-2, Dec. 15, 2014.

[6] *Id.*

Paso, Texas.  TDCJ records indicate Diez's maximum discharge date is May 7, 2016.[7]

According to Diez, Parole Division officials have placed him in the Super Intensive Supervision Program ("SISP"), which features "the highest level of supervision provided by the department."[8]  They have also required him to reside temporarily at the El Paso Transitional Center; wear an electronic monitor with a Global Positioning System ("GPS") mechanism to keep track of his location; pay parole fees; participate in an Alcoholics Anonymous/Narcotics Anonymous twelve-step program; and go to an ISF periodically for alleged violations of the terms of his mandatory supervision.

Diez filed his most recent state application for writ of habeas corpus, challenging the denial of his release to mandatory supervision on May 8, 2014.[9]  The Texas Court of Criminal Appeals dismissed it on June 25, 2014, apparently erroneously, in the belief that Diez had already discharged his sentence.[10]  Diez filed the instant petition on August 4, 2014.[11]

Mindful of Diez's *pro se* status,[12] the Court understands him to assert ten grounds for

---

[7] *Id.*

[8] Tex. Gov't Code § 508.317 (West 2015).

[9] State Writ R., *Ex parte Diez*, WR-14,622-18.

[10] *Id.* at Action Taken Sheet.

[11] Pet'r's Pet. 15, ECF No. 6, Aug. 14, 2014.

[12] *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding pro se pleadings to less stringent standards than formal pleadings drafted by lawyers); *see also Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) (explaining liberal construction allows active interpretation of a pro se pleading to encompass any allegation which may raise a claim for federal relief).

relief:

    1. TDCJ officials unlawfully confined him at the Michael and Walls Unit after he became eligible for mandatory supervision.

    2. Upon his release from prison, parole officers unlawfully confined him at the El Paso Transition Center.

    3. Parole officers increased the severity of his punishment, and violated the Ex Post Facto Clause, by placing him in the SISP.

    4. Parole officers unlawfully placed him in electronic confinement by requiring him to wear an electronic monitoring device.

    5. Parole officers used unlawful extra-judicial restraints when they banished him from Lubbock County.

    6. TDCJ officials unlawfully confined him in an ISF on three occasions because, according to him, no such sanction may be imposed on him due to the date of his holding conviction.

    7. Parole officers unlawfully imposed parole fees on him.

    8. Parole officers unlawfully compelled him to participate in twelve-step programs which require participants to profess a belief in a higher power and other things offensive to him.

    9. Parole officers unlawfully discriminate against him, a homeless American, causing an extension of his confinement.

    10. TDCJ officials unlawfully denied him nine months and twenty-six days of non-forfeitable credit awarded to him under the Prison Management Act in or around 1987.

Diez seeks immediate release from "confinement" at the El Paso Transitional Center and

the SISP, removal of all electronic monitoring equipment, and the restoration of time awarded to

him under the Prison Management Act.[13]  He further asks for an order restraining Stephens from

requiring him to participate in a twelve-step program.  Finally, he seeks reimbursement for all

parole fees collected and compensation for all periods of unlawful confinement.

## APPLICABLE LAW

A petition for a writ of habeas corpus permits a person in custody to attack "the fact or

duration of his confinement" and secure his release from illegal confinement.[14]  "[I]t cannot be

used properly for any other purpose."[15]  The writ, if granted, provides "an extraordinary

remedy"[16] reserved for those petitioners whom "society has grievously wronged."[17]  The writ "is

designed to guard against extreme malfunctions in the state criminal justice system."[18]  It

provides an important, but limited, examination of an inmate's conviction and sentence.[19]

Accordingly, the federal habeas courts' role in reviewing state prisoner petitions is

exceedingly narrow.  "Indeed, federal courts do not sit as courts of appeal and error for state

---

[13] Pet'r's Pet. 10–12, ECF No. 6, Aug. 14, 2014.

[14] *Preiser v. Rodriguez*, 411 U.S. 475, 484, 489 (1973).

[15] *Pierre v. United States*, 525 F.2d 933, 936 (5th Cir. 1976).

[16] *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993).

[17] *Id.* at 634.

[18] *Id.* (citing Justice Stevens's concurrence in *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

[19] *See Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 787 (2011) ("[S]tate courts are the principal forum for asserting constitutional challenges to state convictions.").

court convictions."[20]  They must generally defer to state court decisions on the merits[21] and on

procedural grounds.[22]  They may not grant relief to correct errors of state constitutional, statutory,

or procedural law, unless a federal issue is also present.[23]

A federal court may only grant relief if "the state court's adjudication of the merits was

'contrary to, or involved an unreasonable application of, clearly established Federal law,' "[24] or

"resulted in a decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding."[25]  The focus of this well-developed

standard "is not whether a federal court believes the state court's determination was incorrect but

whether that determination was unreasonable—a substantially higher threshold."[26]

Moreover, the federal court's focus is on the state court's ultimate legal conclusion, not

whether the state court considered and discussed every angle of the evidence.[27]  Indeed, state

---

[20] *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

[21] *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).

[22] *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991); *Muniz v. Johnson*, 132 F.3d 214, 220 (5th Cir. 1998).

[23] *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).

[24] *Berghuis v. Thompkins*, 560 U.S. 370, 378 (2010) (quoting 28 U.S.C. § 2254(d)(1)).

[25] 28 U.S.C. § 2254(d)(2) (2012).

[26] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[27] *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc); *see also Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) ("we review only the state court's decision, not its reasoning or written opinion").

courts are presumed to know and follow the law."[28]  Factual findings, including credibility

choices, are entitled to the statutory presumption, so long as they are not unreasonable "in light of

the evidence presented in the State court proceeding."[29]  Further, factual determinations made by

a state court enjoy a presumption of correctness which the petitioner can rebut only by clear and

convincing evidence.[30]  The presumption of correctness applies not only to express findings of

fact, but also to "unarticulated findings which are necessary to the state court's conclusions of

mixed law and fact."[31]

In sum, the federal writ serves as a "guard against *extreme malfunctions* in the state

criminal justice systems," not as a vehicle for error correction.[32]  "If this standard is difficult to

meet, that is because it was meant to be."[33]

## ANALYSIS

### A.      Release to Mandatory Supervision (Claims One and Ten)

Diez's petition contains two claims relating to his release to mandatory supervision.  In

his first claim, Diez asserts TDCJ should have released him from prison to mandatory

---

[28] *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

[29] 28 U.S.C. § 2254(d)(2).

[30] 28 U.S.C. § 2254(e)(1); *see Clark v. Quarterman*, 457 F.3d 441, 444 (5th Cir. 2006) (noting that a state court's determination under § 2254(d)(2) is a question of fact).

[31] *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001).

[32] *Harrington v. Richter*, 562 U.S. 86, 131 S.C. 770, 786 (2011) (citation omitted) (emphasis added).

[33] *Id.*

supervision on November 17, 2013, when his calender time and good time equaled thirty years. He maintains TDCJ wrongfully kept him in the Michael and Walls Units for an additional ten days, until November 27, 2013.[34] In his tenth claim, Diez maintains TDCJ wrongfully denied him nine months and twenty-six days of good conduct credit due him under the 1987 version of the Prison Management Act.[35] This good conduct credit, if granted, would presumably have resulted in his earlier release to mandatory supervision. Diez seeks immediate release to mandatory supervision and compensation for his unlawful confinement.

Texas law defines mandatory supervision as "the release of an eligible inmate so that the inmate may serve the remainder of the inmate's sentence not on parole but under the supervision of the pardons and paroles division."[36] Before the Texas Legislature amended the mandatory supervision statute in 1996, the Board would "automatically" release an inmate when his actual calendar time served plus any good conduct time accrued equaled the term to which he was sentenced.[37] Under the amended, post-1996 version of the statute, a prisoner who was otherwise

---

[34] *See Richards v. Dretke*, 394 F.3d 291, 294 n.5 (5th Cir. 2004) ("A 30–day delay of mandatory supervision release might be *de minimis* and therefore not give rise to a due process claim.").

[35] *See Diez v. Director, TDCJ-CID*, 6:07-CV-434, 2008 WL 782633, at * (E.D. Tex. Mar. 20, 2008) ("In this case, the records are clear . . . that he has not received the credit on his sentence that he believes appropriate for the Prison Management Act time, were known or should have been known to him in 2002. Consequently, these claims could have been raised in an earlier petition, and therefore are 'second or successive' within the meaning of 28 U.S.C. § 2244(d). Because Diez did not secure permission from the Fifth Circuit before filing these claims, the Court lacks jurisdiction over them.").

[36] Tex. Gov't. Code § 508.001(5).

[37] *Ex parte Geiken*, 28 S.W.3d 553, 555 (Tex. Crim. App. 2000); *compare* Tex. Code Crim. Proc. art. 48.12, § 8(c) (West 1995), and Tex. Code Crim. Proc. art. 48.12 § 8(c) (West

-8-

eligible for release to mandatory supervision could nevertheless be "discretionarily" denied release if the Board determined that his accrued good conduct time credits did not accurately reflect his potential for rehabilitation and that he would endanger the public if released.[38]

Either mandatory supervision scheme creates a constitutional expectancy in early release and a concomitant protected liberty interest.[39] Therefore, a prisoner is entitled to due process protections with respect to a decision which may result in a delay in his release to mandatory supervision. This simply means, however, that the Board must afford a prisoner certain procedural due process protections before it decides to take away earned good conduct credits or deny him release to mandatory supervision. Procedural due process requires, essentially, that the Board give a prisoner notice and a meaningful opportunity to be heard.[40] Additionally, if the Board decides to deny a prisoner release, it must inform him "in what respects he falls short of qualifying for early release."[41]

As noted above, a petition for a writ of habeas corpus permits a prisoner to challenge "the

---

1996, effective September 1, 1996) (re-codified at Tex. Gov't Code §§ 508.147, 508.149 (West 1999)).

[38] Tex. Code Crim. Proc. art. 48.12, § 8(c) (West 1996) (re-codified at Tex. Gov't Code §§ 508.147, 508.149 (West 1999)).

[39] *Malchi v. Thaler*, 211 F.3d 953, 957–58 (5th Cir. 2000); *Teague v. Quarterman*, 482 F.3d 769, 777 (5th Cir. 2007); *Ex parte Geiken*, 28 S.W.3d at 558.

[40] *Ex parte Geiken*, 28 S.W.3d at 560.

[41] *Id.* (citing *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 16 (1979)).

  
fact or duration of his confinement."[42]  The record shows the Board released Diez to mandatory supervision on November 27, 2013.[43]

Article III, § 2, of the Constitution limits federal court jurisdiction to actual cases and controversies.[44]  "A moot case presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents."[45]  A case may become moot when an "intervening factual event . . . causes the [petitioner] to no longer have a present right to be vindicated or a stake or interest in the outcome."[46]  It may also become moot "when the court cannot grant the relief requested by the moving party."[47]

In this case, the Court cannot order Stephens to immediately release Diez to mandatory supervision because the Board has already done so.  Furthermore, it cannot order Stephens to compensate Diez for his purported wrongful incarceration because a § 2254 petition does not provide the proper vehicle for obtaining damages.[48]  In order for Diez to recover damages for the

---

[42] *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973).

[43] Resp't's Answer, Ex. B (Aff. of Charley Valdez, Program Supervisor III, Classification and Records Department, Texas Department of Criminal Justice), ECF No. 22-2, Dec. 15, 2014.

[44] *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).

[45] *Goldin v. Bartholow*, 166 F.3d 710, 717 (5th Cir. 1999) (internal citations omitted).

[46] *Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 227 (5th Cir.1998) (citations omitted).

[47] *Salgado v. Federal Bureau of Prisons*, 220 F. App'x 256, 257 (5th Cir. 2007) (citing *Bailey v. Southerland*, 821 F.2d 277, 278 (5th Cir. 1987)).

[48] *Preiser v. Rodriguez*, 411 U.S. 475, 489, 494 (1973).

alleged unconstitutional imprisonment, he must file a civil rights action.[49]  Thus, Diez no longer

has a present right to be vindicated, the Court cannot grant the relief he seeks, and his claims are

moot.

> **B.      Conditions of Mandatory Supervision (Claims Two Through Nine)**

In his remaining claims, Diez challenges the conditions of his release to mandatory

supervision.  Diez asserts that Stephens is unconstitutionally confining him in the El Paso

Transition Center, requiring him to participate in the SISP, subjecting him to confinement by

electronic GPS tracking device, banishing him from Lubbock County, confining him periodically

in an ISF, ordering him to pay parole fees, requiring him to participate in a twelve-step program,

and refusing to release him from the El Paso Transitional Center without a permanent address.

All of Diez's claims rest on the premise that requiring these conditions for release to mandatory

supervision impact a federally protected constitutional liberty interest.

A liberty interest may emanate from either the Due Process Clause of the Constitution or

from state law.[50]  The due process rights of a prisoners are generally limited to freedom of

restraint which "impose atypical and significant hardship on the inmate in relation to the ordinary

incidents of prison life."[51]  Only those state-law-created substantive interests that "inevitably

---

[49] *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir.1993) (citing *Pierre v. United States*, 525 F.2d 933, 935 (5th Cir. 1976)).

[50] See *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

[51] *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

affect the duration of [a prisoner's] sentence" qualify for constitutional protection.[52]

Under Texas law, inmates on mandatory supervision are released from the Institutional Division to the Parole Division while "serv [ing] the remainder of [their] sentence."[53]  The Parole Division must then "supervise and reintegrate felons into society after [their] release from confinement."[54]  There is nothing "atypical" about requiring an inmate serving a court-imposed sentence for burglary of a habitation with a history of violations of his conditions of supervised release to reside in a halfway house, participate in a SISP, wear an electronic monitor, refrain from traveling to Lubbock County, spend time in an ISF when he violates the conditions of his release, pay parole fees, or participate in a twelve-step program while on mandatory supervised release.[55]

Furthermore, the Texas Legislature has specifically authorized officials in the Parole Division to impose conditions on inmates released to mandatory supervision.  In fact, the law in effect in 1992 when Diez committed the burglary of a habitation authorized the Texas Board of

[52] *Id.* at 487; *Orellana v. Kyle*, 65 F.3d 29, 31–32 (5th Cir.1995).

[53] Tex. Gov't Code § 508.001(5) (West 2015).

[54] *Id.* § 493.005 (West 2015).

[55] *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987) ("Probation is simply one point (or, more accurately, one set of points) on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service.  A number of different options lie between those extremes, including confinement in a medium- or minimum-security facility, work-release programs, "halfway houses," and probation—which can itself be more or less confining depending upon the number and severity of restrictions imposed.."); *Charles v. Rodriguez*, 112 Fed. App'x 332, 334 (5th Cir. 2004) (finding that parolee's "limited confinement in furtherance of a condition of his mandatory supervision did not rise to the level of a constitutional violation).

Criminal Justice to "adopt such other reasonable rules not inconsistent with law as it may deem proper or necessary with respect to the . . . conditions to be imposed upon . . . persons released to mandatory supervision."[56]

Texas law specifically permits Parole Division officials to confine "some mandatory supervisees in halfway houses as a component of Texas's overall scheme of imprisoning and reforming felons and then reintegrating them into society."[57]  It requires TDCJ to establish a program to provide super-intensive supervision for selected inmates released on parole or mandatory supervision.[58]  It also allows electronic monitoring and "any condition that a court may impose on a defendant placed on community supervision[.]"[59]  These conditions, when imposed on Diez, did not affect the duration of his sentence.

Additionally, "[t]o the extent that [Diez] argues that SISP violates the Ex Post Facto Clause by increasing the punishment for his offense, his argument fails."[60]  Moreover, "changes in Texas parole laws imposing electronic monitoring, urinalysis, driving restrictions, and curfew did not constitute an ex post facto violation."[61]

---

[56] *Swope v. State*, 723 S.W.2d 216, 229 (Tex. App.—Austin 1986) (quoting Tex. Code Crim. Proc. art. 42.12, § 15(g) (Vernon 1986) (since repealed)).

[57] *Jackson v. Johnson*, 475 F.3d 261, 267 (5th Cir. 2007).

[58] Tex. Gov't Code § 508.317 (West 2015).

[59] *Id.* § 508.221 (West 2015).

[60] *Cruz v. Texas Parole Div.*, 87 F.App'x 346, 347 (5th Cir. 2004).

[61] *Id.* (citing *Vineyard v. Keesee*, 70 F.3d 1266, at *2 (5th Cir. 1995).

Finally, the state habeas court implicitly found that the conditions imposed on petitioner did not violate his constitutional rights.  This decision is not contrary to clearly established federal law or otherwise unreasonable.[62]

Accordingly, the Court finds Diez's claims are without merit, and he is not entitled to § 2254 relief.

## EVIDENTIARY HEARING

A court will hold an evidentiary hearing on a § 2254 petition only when the petitioner shows either (1) the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or (2) a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.  Diez does not assert that either prerequisite for a hearing exists in his case.  The record is adequate to dispose fully and fairly of Diez's claims.  The Court need inquire no further on collateral review and an evidentiary hearing is not necessary.

## CERTIFICATE OF APPEALABILITY

A petitioner may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability."[63]  Further, appellate review of a habeas petition is limited to the issues on which a certificate of appealability is granted.[64]  In other

---

[62] 28 U.S.C. § 2254(d).

[63] 28 U.S.C. § 2253(c)(1)(B) (2012).

[64] *See Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997) (holding that, in regard to the denial of relief in habeas corpus actions, the scope of appellate review is limited to the issues on

words, a certificate of appealability is granted or denied on an issue-by-issue basis, thereby limiting appellate review solely to those issues on which a certificate of appealability is granted.[65] Although Diez has not yet filed a notice of appeal, this Court nonetheless must address whether he is entitled to a certificate of appealability.[66]

A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[67] In cases where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[68] To warrant a grant of the certificate as to claims that the district court rejects solely

---

which a certificate of appealability is granted).

[65] *See* 28 U.S.C. § 2253(c)(3) (setting forth the narrow scope of appellate review in habeas corpus matters); *see also Lackey*, 116 F.3d at 151 (holding that a certificate of appealability is granted on an issue-by-issue basis, thereby limiting appellate review to those issues); *but see United States v. Kimler*, 150 F.3d 429, 431 n.1 (5th Cir. 1998) ("We have decided, however, that the monolithic nature of [Federal Rule of Appellate Procedure] Rule 22(b) in conjunction with Congress's mandate for issue specificity on collateral review embodied in 28 U.S.C. § 2253(c)(3) requires a more express request. In order to obtain appellate review of the issues the district court refused to certify, the petitioner must first make the threshold substantial showing of the denial of a constitutional right. *See* 28 U.S.C. 2253(c)(2). Only after clearing this hurdle may the petitioner proceed to brief and we review the merits of the rejected issues.").

[66] *See* 28 U.S.C. foll. § 2255 Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").

[67] 28 U.S.C. § 2253(c)(2).

[68] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to a certificate of appealability determination in the context of § 2255 proceedings).

on procedural grounds, the petitioner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[69] Here, Diez is not entitled to a certificate of appealability because reasonable jurists would not find debatable the Court's conclusions that he has not made a substantial showing of the denial of a constitutional right. Accordingly, the Court finds that it should deny Diez a certificate of appealability.

### CONCLUSION AND ORDERS

The Court concludes that Diez is not entitled to § 2254 relief. The Court further concludes that Diez is not entitled to a certificate of appealability. Accordingly, the Court enters the following orders:

**IT IS ORDERED** that Diez's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 6) is **DENIED**, and his cause is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Diez is **DENIED** a certificate of appealability.

**IT IS ALSO ORDERED** that all pending motions are **DENIED AS MOOT**.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

**SO ORDERED**.

SIGNED this _____ day of July 2014.

DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE

---

[69] *Slack*, 529 U.S. at 484.

-16-